**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**Houston Division**

| | |
|---|---|
| **BANILLA GAMES, INC.,**      ) | |
| ) | |
| **Plaintiff,**      ) | |
| ) | |
| **v.**      ) | **Civil Action No.:** __4:26-cv-4922__ |
| ) | |
| **ANH HUNG NGUYEN,**      ) | |
| ) | |
| **Defendant.**      ) | |
| ) | |

## ORIGINAL COMPLAINT

Plaintiff, Banilla Games, Inc. ("**Banilla**" or "**Plaintiff**"), by counsel, alleges the following

for its Original Complaint against Defendant, Anh Hung Nguyen ("**Nguyen**" or "**Defendant**").

## I.

## THE PARTIES

1. Banilla is a corporation duly organized and existing under the laws of the State of

North Carolina with its principal place of business in Greenville, Pitt County, North Carolina.

Banilla creates, designs, develops, and manufactures software, artwork, and audiovisual effects for

various electronic games in various markets, including, but not limited to, the skill-based

redemption market.

2. Defendant, Anh Hung Nguyen is an individual who, upon information and belief,

resides at 12050 Spring Grove Drive, Houston, Texas 77099, and who is, among other things,

engaged in the unauthorized use, reproduction, sale, distribution, and/or exploitation of counterfeit

products purporting to be genuine Banilla products. These counterfeit products infringe upon

Banilla's intellectual property rights and Defendant has profited from the unauthorized use of

Banilla's trademarked and copyrighted material, as more fully described herein.

**II.**

**<u>JURISDICTION AND VENUE</u>**

3. This Court has subject matter jurisdiction over the claims in this action that arise under the Lanham Act and Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

4. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because Banilla and Defendant are citizens of different states and the claims asserted herein exceed $75,000.00, exclusive of interest and costs. Banilla is a citizen of the State of North Carolina and, upon information and belief, Defendant is a citizen of the State of Texas. Accordingly, complete diversity of citizenship exists between Banilla and Defendant.

5. This Court has supplemental jurisdiction over Banilla's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

6. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant resides in this district, has operated, distributed, or placed infringing products within this State and this district, and has otherwise established contacts within this State and this district sufficient to permit the exercise of general and specific jurisdiction.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Banilla's claims occurred in this district and under the provision of 28 U.S.C. § 1400(a) because Defendant resides in this district.

## III.

## <u>NATURE OF THE CASE</u>

8.    Over the last decade, Banilla has firmly established itself as a prominent leader in the skill-based gaming and amusement industry. Banilla is widely recognized for its innovation and commitment to quality, attributes that have earned the company a strong reputation among distributors, route operators, players, and industry participants alike. Banilla markets its flagship suite of video gaming systems under the "FUSION" brand ("**FUSION Games**"). Banilla has invested substantial time, effort, and resources in developing and protecting its brand and intellectual property, including the FUSION Games, and is committed to safeguarding these valuable assets.

9.    This is a civil action arising from Defendant's willful and deliberate infringement of Banilla's intellectual property rights, including, but not limited to, its exclusive rights in and to the FUSION brand of video gaming systems. Defendant has engaged in the unauthorized purchase, use, distribution, sale, placement, vending, marketing, and/or public display of counterfeit versions of Banilla's products and exploitation of the following trademarks owned by Banilla (collectively, the "**Banilla Marks**"):

      a.    the federally registered BANILLA GAMES word mark and BANILLA GAMES stylized design mark (the "**BANILLA GAMES Marks**");

      b.    the federally registered CRUMBLE CAVE trademark (the "**CRUMBLE CAVE Mark**");

      c.    the federally registered BOURBON STREET DICE trademark (the "**BOURBON STREET DICE Mark**");

3

d.  the federally registered VEGAS MAGIC trademark (the "**VEGAS MAGIC Mark**");

e.  the federally registered PLUNDERIN' PIRATES word mark and PLUNDERIN' PIRATES stylized design mark (the "**PLUNDERIN' PIRATES Marks**");

f.  the federally registered OFFSHORE ANGLER trademark (the "**OFFSHORE ANGLER Mark**");

g.  the federally registered TERROR TAVERN trademark (the "**TERROR TAVERN Mark**"); and

h.  the federally registered GORGON TREASURES OF GREECE trademark (the "**GORGON TREASURES OF GREECE Mark**").

Defendant's conduct violates Banilla's exclusive rights in the Banilla Marks.

10.  Banilla asserts claims for trademark counterfeiting and infringement under Section 32(1) of the Lanham Act,[1] 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related state-law unfair competition and trademark infringement claims under Texas law.

11.  The Banilla Marks, which are inherently distinctive and have acquired substantial secondary meaning in the marketplace, signify to consumers the high quality and origin of Banilla's products in the various nudge, skill, redemption, and amusement game markets, are valid, protectable, and enforceable under federal and state law.

12.  Banilla brings claims for copyright infringement pursuant to the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 *et seq*. These claims

---

[1] Hereinafter, the term "Lanham Act" refers to 15 U.S.C. §§ 1051 *et seq*.

arise from Defendant's unauthorized purchase, distribution, sale, placement, vending, marketing, public display, and/or commercial exploitation of counterfeit FUSION Games, which reproduce, copy, and are substantially similar to—and therefore, infringe—Banilla's copyrighted works. Banilla seeks all remedies available under the Copyright Act, including, but not limited to, preliminary and permanent injunctive relief, recovery of Banilla's actual damages and Defendant's profits attributable to the infringing conduct or statutory damages, and such other monetary and equitable relief as the Court deems just and proper.

13.     The Banilla Marks, as well as Banilla's federal copyrights, are valid, subsisting, and enforceable.  The Banilla Marks are inherently distinctive and/or have acquired distinctiveness through extensive and continuous use in commerce, signifying to consumers the high quality and single source of Banilla's goods and services in the various nudge, skill, redemption, and amusement game markets. These trademarks and copyrights embody the substantial goodwill and reputation that Banilla has developed over many years through continuous use in commerce, and they belong exclusively to Banilla.

**IV.**

**FACTUAL ALLEGATIONS**

**I.      BANILLA'S BUSINESS AND INTELLECTUAL PROPERTY**

14.     Since 2013, Banilla has invested millions of dollars in the development of its high-quality and reliable electronic games of skill. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, develop, from scratch, all design and software components of the FUSION Games. These components include, but are not limited to, the games' source code, object code, two-dimensional and other artwork, static images, and other visual and audiovisual effects that contribute to the distinctive and enjoyable user experience of the FUSION

5

Games. All the artwork, static images, and audiovisual effects in the FUSION Games are original—i.e., created by the in-house game design teams—and none of that artwork, static images, and audiovisual effects are copied from any third-party source in the creation of these products.

15. Banilla manufactures and distributes a variety of skill-game and amusement devices, including the FUSION-branded devices, which are currently in their sixth iteration.

16. Banilla serves as the exclusive distributor of the FUSION Games. Through Banilla's distribution efforts, the FUSION Games, including the Copyrighted Works (as defined below), are made available to customers, who in turn, place the FUSION Games in their respective places of business.

17. To obtain the FUSION Games, including the Copyrighted Works (as defined below), an individual or business must purchase the FUSION Games directly from Banilla or from an authorized reseller to whom Banilla has sold legitimate FUSION Games. No other channel of distribution is authorized by Banilla.

18. Banilla has invested substantial time, effort, and resources in developing, marketing, and distributing the FUSION Games to its customers and providing exemplary customer service to those customers who purchase legitimate copies of the FUSION Games.

19. Banilla's FUSION Games are highly regarded by Banilla's customers (e.g., the operators who purchase the games) and end users (e.g., the individuals who play the games), all of whom have come to associate the FUSION Games and the Banilla Marks with high-quality products and superior customer service from Banilla.

20. Banilla continues to invest heavily in the development and protection of its intellectual property and has consistently and vigorously protected and enforced those rights.

21.     In furtherance of its brand-building efforts, Banilla has used the BANILLA GAMES Marks in commerce throughout the United States continuously since at least February 16, 2014. The BANILLA GAMES Marks have been used in connection with the manufacture, distribution, offering for sale, sale, marketing, advertising, and promotion of products in the board, nudge, skill, redemption, and amusement game markets.

22.     Banilla is the owner of the intellectual property rights in the software for the FUSION Games, which consists of a series of game suites. These intellectual property rights include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in the FUSION line of video games, including, but not limited to, the following:

- Number PA0002206908, obtained on October 11, 2019, for Banilla's FUSION video game (the "**Fusion Copyrighted Work**").[2]

- Number PA0002218349, obtained on October 11, 2019, for Banilla's FUSION 2 video game (the "**Fusion 2 Copyrighted Work**").[3]

- Number PA0002218347, obtained on October 11, 2019, for Banilla's FUSION 3 video game (the "**Fusion 3 Copyrighted Work**").[4]

- Number PA0002293309, obtained on May 24, 2021, for Banilla's FUSION 4 video game (the "**Fusion 4 Copyrighted Work**").[5]

- Number PAu004088597, obtained on May 24, 2021, for Banilla's FUSION 5 video game (the "**Fusion 5 Copyrighted Work**").[6]

---

[2] Attached hereto as **Exhibit 1**.
[3] Attached hereto as **Exhibit 2**.
[4] Attached hereto as **Exhibit 3**.
[5] Attached hereto as **Exhibit 4**.
[6] Attached hereto as **Exhibit 5**.

- Number PA0002559762, obtained on September 22, 2025, for Banilla's FUSION 6 video game (the "**Fusion 6 Copyrighted Work**").[7]

- Number PA0002368424, obtained on July 19, 2022, for Banilla's FUSION Link video game (the "**Fusion Link Copyrighted Work**").[8]

Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including, as relevant here: the game title "Crumble Cave," Number VA0002173744, obtained on October 11, 2019 (the "**Crumble Cave Copyrighted Work**");[9] the game title "Bourbon Street Dice," Number VA0002184888, obtained on October 11, 2019 (the "**Bourbon Street Dice Copyrighted Work**");[10] the game title "Ticket to Ride," Number VA0002184964, obtained on October 11, 2019 (the "**Ticket to Ride Copyrighted Work**");[11] the game title "Plunderin' Pirates," Number PA0002533777, obtained on March 19, 2025 (the "**Plunderin' Pirates Copyrighted Work**"),[12] the game title "Terror Tavern," Number PA0002551216, obtained on June 13, 2025 (the "**Terror Tavern Copyrighted Work**"),[13] the game title "Offshore Angler," Number PA0002537346, obtained on March 27, 2025 (the "**Offshore Angler Copyrighted Work**"),[14] the game title "Topshot Golf," Number PA002551916, obtained on June 26, 2025 (the "**Topshot Golf Copyrighted Work**"),[15] the game title "Gorgon: Treasures of Greece," Number PA0002551204, obtained on June 13, 2025 (the "**Gorgon Copyrighted**

---

[7] Attached hereto as **Exhibit 6**.
[8] Attached hereto as **Exhibit 7**.
[9] Attached hereto as **Exhibit 8**.
[10] Attached hereto as **Exhibit 9**.
[11] Attached hereto as **Exhibit 10**.
[12] Attached hereto as **Exhibit 11**.
[13] Attached hereto as **Exhibit 12**.
[14] Attached hereto as **Exhibit 13**.
[15] Attached hereto as **Exhibit 14**.

**Work**")[16]; and the game title "Vegas Magic," Number VA0002184972, obtained on October 11, 2019 (the "**Vegas Magic Copyrighted Work**").[17] Hereinafter, the copyright registrations will be referred to collectively as the "**Copyrighted Works**."

23.     In addition, Banilla has continuously used the trademark "FUSION" in commerce throughout the United States since at least as early as February 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of its FUSION Games, including the Copyrighted Works at issue in this action (the "**FUSION Mark**"). Attached hereto as **Exhibit 17** are representative samples of materials evidencing Banilla's use of the FUSION Mark in connection with the FUSION Games.

24.     Since their introduction, the FUSION Games have become among the most popular and widely recognized skill games available in the United States, enjoying widespread recognition and use by players, locations, route operators, and resellers. *See, e.g.,* https://banillagames.com/product-category/platforms/skill-games/fusion-series/; *see also* https://banillagames.com/product-category/platforms/skill-games/fusion-link/. As a result of Banilla's longstanding and continuous use of the FUSION Mark, and the consistently high quality of its goods and services offered thereunder, the FUSION Mark has acquired substantial secondary meaning and become widely known throughout the United States, including in Texas. The FUSION Mark is closely and exclusively identified with Banilla and represents substantial and valuable goodwill belonging to Banilla.

25.     By virtue of its widespread, continuous, and exclusive use of the FUSION Mark to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to

---

[16] Attached hereto as **Exhibit 15**.
[17] Attached hereto as **Exhibit 16**.

identify Banilla as the single source of origin of those products, Banilla owns valid, protectable, and subsisting statutory and common law rights in and to the FUSION Mark.

26. Banilla is the owner of the following valid and subsisting United States Trademark Registrations on the Principal Register of the United States Patent and Trademark Office ("**USPTO**"):

a. "BANILLA GAMES," Registration No. 7,187,483, which registration issued on October 10, 2023, as shown in **Exhibit 18**.

b. "BANILLA GAMES (stylized w/ bananas)," Registration No. 7,187,484, which registration issued on October 10, 2023, as shown in **Exhibit 19**.

c. "CRUMBLE CAVE," Registration No. 8,157,384, which registration issued on March 3, 2026, as shown in **Exhibit 20**.

d. "BOURBON STREET DICE," Registration No. 8,165,445, which registration issued on March 10, 2026, as shown in **Exhibit 21**.

e. "VEGAS MAGIC," Registration No. 8,157,385, which registration issued on March 3, 2026, as shown in **Exhibit 22**.

f. "PLUNDERIN' PIRATES," Registration No. 8,095,915, which registration issued on January 6, 2026, as shown in **Exhibit 23**.

g. "PLUNDERIN' PIRATES (stylized)," Registration No. 8,202,393, which registration issued on April 7, 2026, as shown in **Exhibit 24**.

h. "OFFSHORE ANGLER," Registration No. 8,174,554, which registration issued on March 17, 2026, as shown in **Exhibit 25**.

i. "TERROR TAVERN," Registration No. 7,994,942, which registration issued on October 21, 2025, as shown in **Exhibit 26**.

10

j.　　　"GORGON TREASURES OF GREECE," Registration No. 8,174,555, which registration issued on March 17, 2026, as shown in **Exhibit 27**.

27.　　Banilla has used the BANILLA GAMES word mark and the BANILLA GAMES (stylized w/ bananas) design mark in interstate commerce in the United States continuously since at least as early as February 6, 2014, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

28.　　Banilla has used the CRUMBLE CAVE Mark in interstate commerce in the United States, including Texas, continuously since at least as early as April 26, 2017, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

29.　　Banilla has used the BOURBON STREET DICE Mark in interstate commerce in the United States, including Texas, continuously since at least as early as October 11, 2017, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

30.　　Banilla has used the VEGAS MAGIC Mark in interstate commerce in the United States, including Texas, continuously since at least as early as July 5, 2018, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

31.　　Banilla has used the PLUNDERIN' PIRATES Marks in interstate commerce in the United States, including Texas, continuously since at least as early as August 16, 2019, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing,

11

advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

32.    Banilla has used the OFFSHORE ANGLER Mark in interstate commerce in the United States, including Texas, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

33.    Banilla has used the TERROR TAVERN Mark in interstate commerce in the United States, including Texas, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

34.    Banilla has used the GORGON TREASURES OF GREECE Mark in interstate commerce in the United States, including Texas, continuously since at least as early as July 13, 2023, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

35.    As a result of the widespread, continuous, and exclusive use of the Banilla Marks in interstate commerce to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify and distinguish Banilla as the source of those products, Banilla owns valid and subsisting federal statutory and common law trademark rights in and to the Banilla Marks.

36.    Banilla has made significant investments of time and resources in promoting and marketing its goods and services provided under the Banilla Marks. As a direct result of Banilla's continuous and exclusive use and promotion of the Banilla Marks in connection with its goods and

services, Banilla has developed and now owns substantial and valuable goodwill symbolized by and associated with the Banilla Marks.

37.    As a direct result of these efforts, the goodwill and recognition that Banilla has established in the Banilla Marks have enabled Banilla to achieve substantial sales of its products in the board, nudge, skill, redemption, and amusement game markets under the Banilla Marks throughout the United States.

38.    The Banilla Marks are inherently distinctive and/or have acquired strong secondary meaning among both the consuming public and the relevant trade, including participants in the skill-based redemption game market.

39.    As a direct result of its significant investment in the promotion and marketing of the FUSION Games, Banilla has become recognized as a global leader in the electronic gaming industry. As a leader in its field, Banilla diligently protects its business and products through comprehensive intellectual property enforcement measures, including the registration of copyrightable works with the United States Copyright Office, registration of trademarks and service marks with the United States Patent and Trademark Office, protection of trade secrets, and other measures designed to safeguard its intellectual property rights. As a result of these efforts, Banilla has developed and owns substantial and valuable goodwill associated with the Banilla Marks.

## II.    DEFENDANT'S COUNTERFEITING AND INFRINGING ACTIVITIES

### *Copyright Infringement*

40.    Banilla is the exclusive distributor of the FUSION Games. Banilla sells FUSION Games to end users, who, in turn, operate and publicly display them at their places of business.

41.     On or about May 18, 2026 and continuing through at least June 15, 2026, Banilla learned through its own due diligence that Defendant was in possession of and was using, offering for sale, selling, and/or distributing at least seven (7) pirated, or hacked reproductions of the Fusion Copyrighted Work, the Fusion 2 Copyrighted Work, the Fusion 3 Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, and the Fusion Link Copyrighted Work through Defendant's Facebook account.

42.     Upon information and belief, Defendant purchased, distributed, offered for sale, placed, vended, marketed, publicly displayed, and/or otherwise commercially exploited all the unauthorized, pirated, and/or hacked versions of the Copyrighted Works on the secondary market (the "**Illicit Games**"). Neither the cabinets in which the Illicit Games are housed, if any, nor the Illicit Games therein are created, sold, authorized, or licensed by Banilla.

43.     Upon further information and belief, Defendant has either purchased, sold, distributed and/or vended additional Illicit Games, or has the means, motive, and capability to obtain, provide, and use more Illicit Games.

44.     The hacked/pirated/counterfeit Illicit Games are sold for significantly less than genuine products. A genuine game board for the Fusion 4 Game costs $4,995.00. Upon information and belief, Defendant acquired the Illicit Games at a fraction of this cost and thereafter offered for sale to the public unauthorized, pirated, and/or hacked reproductions of: (a) the Fusion Link Copyrighted Work for a sale price of $750.00; (b) the Fusion 6 Copyrighted Work for a sale price of $800.00; (c) the Fusion 5 Copyrighted Work, including a cabinet featuring a 43-inch touch screen, for a sale price of $2,000.00; and (d) additional unauthorized, pirated, and/or hacked copies offered at similar prices.

14

45.     This model allows Defendant to undercut Banilla's market share, divert Banilla's profits, and increase Defendant's own profits at Banilla's expense. By purchasing Illicit Games at a substantially lower price, Defendant can maximize his profits by receiving a larger portion of gross revenue and ultimately secure locations that would otherwise use Banilla's legitimate machines.

46.     Defendant's Illicit Games are substantially similar to the Copyrighted Works in that they present the same game play and substantially similar artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the Illicit Games display dimmer, lower-quality artwork than that found in the Copyrighted Works. Additionally, the game board that runs the Illicit Games is designed in a completely different manner from Banilla's genuine game boards.

47.     Banilla owns all right, title, and interest in and to the copyrights covering the audiovisual effects that tie together the artwork used in the Copyrighted Works, and in this instance, the Fusion Copyrighted Work, the Fusion 2 Copyrighted Work, the Fusion 3 Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, and the Fusion Link Copyrighted Work, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

48.     In addition, Banilla owns all right, title, and interest in and to the following copyrighted audiovisual works: "Crumble Cave," which is incorporated into the Fusion Copyrighted Work; "Bourbon Street Dice" and "Ticket to Ride," which are incorporated into the Fusion 2 Copyrighted Work; "Vegas Magic," which is incorporated into the Fusion 3 Copyrighted Work; "Plunderin' Pirates," which is incorporated into the Fusion 4 Copyrighted Work; "Terror Tavern," "Offshore Angler," and "Topshot Golf," which are incorporated into the Fusion 5

15

Copyrighted Work; and "Gorgon: Treasures of Greece," which is incorporated into the Fusion 6 Copyrighted Work.

49.    The Copyrighted Works are wholly original works of authorship, and Banilla is the sole and exclusive owner of all right, title, and interest in and to the Copyrighted Works and the owner of all the exclusive rights associated with those Copyrighted Works, including, but not limited to, the right to reproduce its software in copies and to distribute those copies to the public. Additionally, 17 U.S.C. § 106(5) provides Banilla, as copyright holder for "motion picture or other audiovisual works," the exclusive right to display the work publicly.

50.    Without Banilla's authorization, consent, or knowledge, and without any compensation to Banilla, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Copyrighted Works.

*Trademark Infringement*

51.    Banilla also owns the BANILLA Marks, which appear at the start-up of each FUSION Game and which are inherently distinctive and/or have developed significant secondary meaning, and are entitled to the broadest scope of protection under federal trademark law.

52.    Without authorization from Banilla, Defendant has used, likely among others, the Banilla Marks, or counterfeit and unauthorized imitations thereof that are confusingly similar to consumers and end users (the "**Infringing Marks**"), in interstate commerce in the United States, in connection with the marketing, distribution, and operation of the Illicit Games.

53.    Defendant's Illicit Games are marketed as, among other things, skill games, and are sold and distributed in the same skill game markets in which Banilla markets and distributes his products. Indeed, the target market for both Banilla's products and services and Defendant's Illicit

16

Games and services are identical, namely distributors and route operators, who make such games available to end users who play the games.

54. Defendant's infringing acts, as alleged herein, have caused and are continuing to cause confusion, mistake, and deception among the relevant consuming public as to the source of origin of Defendant's game boards and have and are continuing to deceive the relevant consuming public into believing, mistakenly, that Defendant's game boards originate from, are associated or affiliated with, or otherwise authorized by Banilla.

55. Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

56. Defendant's Illicit Games are confusingly similar to authentic FUSION Games sold and distributed by Banilla, differing primarily in the speed of game play, the quality of the displayed artwork, and the internal design of the game board.

57. Each time an Illicit Game is placed, publicly displayed, or put into operation, and each time such a machine is started, Defendant employs the Infringing Marks.

58. Defendant's infringing actions, as alleged herein, have caused, or are likely to cause, confusion, mistake, and deception among the relevant consuming public (e.g., consumers and end users) as to the source, sponsorship, or affiliation of the Illicit Games, falsely suggesting an association with or endorsement by Banilla and deceiving the relevant consuming public into believing, mistakenly, that the Illicit Games originate from, are associated or affiliated with, or otherwise authorized by Banilla. The prominent uses of Illicit Games are made with the intent to trade on the goodwill associated with the Banilla Marks.

17

59. Defendant's uses of the Illicit Games create the false impression that his goods and services originate from Banilla, or that Banilla is somewhat connected or associated with, or sponsors, Defendant's goods and services, so as to deceive customers or to cause confusion or mistake as to the origin or affiliation of Defendant's and Banilla's goods and services.

60. Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

*Damages from Copyright and Trademark Infringement*

61. As a result of Defendant's actions, Banilla has been damaged, and continues to be damaged, by the unauthorized publication and public display of counterfeit versions of the Copyrighted Works, including, but not limited to, the Fusion Copyrighted Work, the Fusion 2 Copyrighted Work, the Fusion 3 Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Bourbon Street Dice Copyrighted Work, the Ticket to Ride Copyrighted Work, the Vegas Magic Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work. Furthermore, Banilla has been damaged, and continues to be damaged by Defendant's unauthorized use of the Infringing Marks.

62. Defendant has never accounted to or otherwise paid Banilla for his improper, illegal, and unauthorized use of the Copyrighted Works or the Banilla Marks, or counterfeit reproductions thereof.

18

63.    Defendant's acts are causing, and, unless enjoined by this Court, will continue to cause immediate and irreparable harm and ongoing damages to Banilla, for which Banilla has no adequate remedy at law.

64.    Upon information and belief, Defendant's infringement has been and continues to be willful, intentional, and with reckless disregard for Banilla's rights, entitling Banilla to enhanced damages.

65.    Upon information and belief, Defendant is familiar with the cost of legitimate Banilla products and readily recognizes the Banilla brand and the distinguishing characteristics of legitimate Banilla products, including the Copyrighted Works and the Banilla Marks at issue in this action. Accordingly, Defendant is fully aware that the Copyrighted Works and the Banilla Marks are successful games and titles connected to a successful brand in the relevant marketplace.

66.    Indeed, the FUSION line of games is a well-known and commercially successful product line, popular among both operators, locations, and players. Exploiting this demand, Defendant deliberately selected his counterfeit offerings to capitalize on the established consumer demand for Banilla's FUSION products. In other words, Defendant intentionally targeted Banilla's most recognizable and highest demand products to maximize his own sales, placements, and profits at Banilla's expense.

67.    Upon information and belief, Defendant sourced his counterfeit game boards, which contain pirated copies of Banilla's copyrighted software, from a Chinese manufacturer.

68.    The reason Defendant chose to source his computer boards containing infringing software from a Chinese manufacturer is simple: Defendant sought computer boards containing the most popular games at the lowest possible cost.

19

69. It is well known in the industry that "branded" products sold on Chinese e-commerce platforms are rarely legitimate, licensed products. Indeed, more than one commentator warns of the dangers and the downside to businesses sourcing branded products from such platforms. For example, one blog post warns:

> When browsing on Aliababa.com you can find merchandise of all kinds and therefore *you may end up buying products protected by intellectual property*.
>
> In order to purchase these items [as legitimate, licensed products], the manufacturer will need a special agreement with the [IP] holder and will then have to pay the fixed or ongoing fees for each [licensed] item [that the manufacturer sells].
>
> *In China, most suppliers have no such [license] agreement*, but they still [sell] these products without the [IP] owner's approval.
>
> Let's take for example a shirt with Mickey Mouse on it, we all know that he is a Disney character and that therefore his image is protected by intellectual property and cannot be reproduced without the permission of the company.
>
>            *                *                *
>
> *Buying products [protected by] intellectual property is illegal and the fault lies with the importer, which is you.*
>
> Once stopped at customs, these products are seized and a fine is issued to the importer which could also incur more serious criminal consequences.
>
> The advice is to stay away from this type of products, and *check* with the patent directories *that you can actually sell the products you chose*.

"Is Alibaba legit? How to avoid scams and buy your products safely (emphasis added); available at https://yakkyofy.com/blog/aliexpress-and-other-chinese-ecommerce-en/is-alibaba-legit-how-to-avoid-scams-and-buy-your-products-safely/.

70. Similarly, one digital brand protection company cautions that:

> [A]ny branded product on Alibaba is cause for alarm and it is recommended that companies don't buy *branded products on Alibaba* since they *are almost always fake*.
>
>            *                *                *

20

> It is generally advised to avoid branded products on Alibaba. This is because they are more than likely to be replicas, counterfeit goods, or non-delivery scams. ***Brands usually have a list of partners on their websites, so if you do find a branded product, check the original brand's website***.

"Alibaba scams: The must-read guide for brands" (Some emphasis in original; some emphasis added); *available at* https://www.redpoints.com/blog/alibaba-scams/.

71. Upon information and belief, Defendant knows not only the cost of a legitimate Banilla product but is also aware of the distinguishing characteristics of a legitimate Banilla product.

72. Despite this knowledge, Defendant has willfully and deliberately obtained, upon information and belief, a significant quantity of counterfeit games—Illicit Games—that infringe on the Banilla Marks, Copyrighted Works and Banilla's goodwill.

73. Defendant's conduct has caused, and unless enjoined, will continue to cause, Banilla to suffer lost profits and irreparable harm to its goodwill.

74. Consumers are likely to associate Defendant's Illicit Games with Banilla because, *inter alia*, Defendant's Illicit Games replicate in every material respect the look, feel, and user experience of the FUSION Games.

75. Defendant has engaged in unfair methods of competition and unfair trade practices. Specifically, Defendant is intentionally "passing off" or "palming off" his Illicit Games as if they were authentic, or otherwise authorized, Banilla products in order to cause confusion among consumers as to the source, sponsorship, or approval of such goods, while capitalizing on Banilla's stellar and established reputation for quality products and service.

76. Defendant's conduct is causing, and, unless enjoined by this Court, will continue to cause, immediate and irreparable harm and damage to Banilla, for which Banilla has no adequate remedy at law.

77.    Upon information and belief, Defendant's conduct is willful and undertaken with the deliberate intent to trade on Banilla's goodwill, to cause confusion and deception in the marketplace, and to divert sales from Banilla's authentic FUSION Games to Defendant.

**COUNT I**
**Copyright Infringement Pursuant to 17 U.S.C. §§ 106, 501**

78.    Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

79.    The Copyrighted Works, namely the Fusion Copyrighted Work, the Fusion 2 Copyrighted Work, the Fusion 3 Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Bourbon Street Dice Copyrighted Work, the Ticket to Ride Copyrighted Work, the Vegas Magic Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, are motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

80.    Banilla is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works. Banilla owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works. *See* **Exhibits 1-16**.

81.    Multiple teams of dedicated in-house personnel, acting within the scope of their employment, created the Copyrighted Works. None of these employees have any contractual rights to ownership of the Copyrighted Works and, as such, the Copyrighted Works constitute works made for hire.

82.    Banilla is the owner of all rights, title, and interest in and to the asserted copyrights underlying the Copyrighted Works.

83.     The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

84.     By making the Illicit Games available for use by end users, Defendant has published or caused to be published and publicly displayed and or caused the public display of pirated, hacked, and/or counterfeit copies of, likely among others, the Copyrighted Works, and have done so without Banilla's permission.

85.     As a direct and proximate result of Defendant's infringement of the Copyrighted Works, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner; . . . (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

86.     As a direct and proximate result of Defendant's infringement of Banilla's copyrights, Banilla is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c)(1), in an amount of up to $30,000.00, or up to $150,000.00 for a willful infringement, per copyright violation, with respect to Defendant's infringing use of the Copyrighted Works, or such other amount as may be appropriate under 17 U.S.C. § 504(c). Alternatively, at Banilla's election, pursuant to 17 U.S.C. § 504(b), Banilla shall be entitled to its actual damages, including Defendant's profits from the infringements, as will be proven at trial.

87.     Banilla is entitled to an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 for Defendant's willful infringement.

88.     In all events, Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate

remedy at law. Banilla is thus entitled to impoundment of the Illicit Games, preliminary injunction, and permanent injunction.

## COUNT II
### Federal Trademark Infringement
### Pursuant to 15 U.S.C. § 1114

89.     Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

90.     Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 18-27**.

91.     Defendant's unauthorized use in commerce of the Banilla Marks to promote goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

92.     Defendant's use of the Banilla Marks violates 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Banilla's goodwill and reputation as symbolized by the Banilla Marks, for which Banilla has no adequate remedy at law.

93.     Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion and trade on Banilla's goodwill.

94.     Defendant has caused, and are likely to continue causing, substantial injury to the public and to Banilla, and Banilla is entitled to injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs of this action under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT III
### Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125(a)(1)(A)

95.     Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

96.     Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 18-27**.

97.     Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

98.     Defendant's unauthorized use in commerce of the Banilla Marks to promote his goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

99.     Defendant's unauthorized use in commerce of the Banilla Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

100.    Upon information and belief, Defendant has committed the foregoing acts with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause

25

confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Banilla.

101.    Defendant's conduct as alleged herein constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

102.    Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

103.    Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1116 and 1117, as well as pre- and post-judgment interest.

## COUNT IV
### False Designation of Origin Pursuant to 15 U.S.C. § 1125(a)(1)(B)

104.    Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

105.    Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 18-27**.

106.    Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

107.    Defendant's unauthorized use in commerce of the Banilla Marks and/or confusingly similar variations thereof to promote his goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by

26

creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

108. Defendant's unauthorized use in commerce of the Banilla Marks and/or confusingly similar variations thereof as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

109. Upon information and belief, Defendant has committed the foregoing acts with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Banilla.

110. Defendant's conduct as alleged herein constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(B).

111. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

112. Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1116 and 1117, as well as pre- and post-judgment interest.

**COUNT V**
**Common Law Unfair Competition**

113. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

114. This claim is for passing off, unfair competition, and deceptive trade practices in violation of the common law of Texas.

27

115.    Defendant's actions in palming off or passing off his Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Illicit Games, thereby causing harm to the reputation and goodwill of Banilla.

116.    Defendant has profited and been unjustly enriched by revenue from the Illicit Game(s) that Defendant would not otherwise have made but for his unlawful conduct.

117.    Banilla has been damaged by Defendant's passing off or palming off and unfair or deceptive acts or practices.

118.    As a result of Defendant's passing off and unfair trade practices, Banilla is entitled to an award of its damages, as well as injunctive and equitable relief.

### COUNT VI
### Common Law Trademark Infringement

119.    Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

120.    This claim is for common law trademark infringement against Defendant based on his purchase, distribution, sale, placement, vending, marketing, public display, and/or commercial exploitation of Illicit Games bearing Banilla's FUSION Mark. Banilla is the owner of all common law rights in and to Banilla's FUSION Mark.

121.    Defendant, without authority, have used and are continuing to use Banilla's FUSION Mark, and counterfeit imitations thereof, in connection with the purchase, distribution, sale, placement, vending, marketing, public display, and/or commercial exploitation of the Illicit Games, thereby inducing Defendant's customers and/or clients, and others, to believe, contrary to fact, that the Illicit Games placed/sold by Defendant emanate or originate from Banilla, or that

Banilla has approved, permitted, licensed, or otherwise associated itself with Defendant and his Illicit Games. Defendant's acts have damaged, and impaired the goodwill symbolized by Banilla's FUSION Mark, to Banilla's immediate and irreparable damage.

122. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to be confused about the source of origin of the Illicit Games and will likely mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

123. Defendant's unauthorized use of the Banilla Marks or counterfeit imitations thereof, which are either identical or confusingly similar to the Banilla Marks, in connection with the purchase, distribution, sale, placement, vending, marketing, public display, and/or commercial exploitation of FUSION Games or the Illicit Games as alleged herein, have caused and is likely to continue to cause confusion, mistake, and deceive consumers as to the source, sponsorship, or affiliation of the Illicit Games, and is likely to cause consumers to believe, contrary to fact, that the Illicit Games are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla, all in violation of Banilla's rights under the common law of Texas.

124. Defendant's acts in purchasing, distributing, selling, placing, vending, marketing, publicly displaying, and/or commercially exploiting counterfeit versions of Banilla's FUSION Games, were committed with full knowledge of Banilla's prior rights in the Banilla Marks, and done willfully, deliberately, and in bad faith.

125. Defendant's conduct alleged herein constitutes trademark infringement and unfair competition under the common law of Texas.

126.    Defendant has used the Banilla Marks on his Illicit Games that were not manufactured by or authorized by Banilla, and, therefore, Defendant has deliberately attempted to deceive and mislead consumers.

127.    Defendant, through his continued and unauthorized use of the Banilla Marks, is unfairly benefiting from and misappropriating Banilla's goodwill and reputation, resulting in serious, substantial, and irreparable injury to Banilla and the public.

## V.
## PRAYER

WHEREFORE, Plaintiff prays to the Court as follows:

1.    For judgment that Defendant, Anh Hung Nguyen:

(a)    Has violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

(b)    Has violated Section 32(1) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a);

(c)    Has engaged in unfair competition in violation of the common law of Texas; and

(d)    Has engaged in trademark infringement in violation of the common law of Texas; and violated state law, Chapter 16 of the Texas Business and Commerce Code, and Texas Penal Code § 32.23.

2.    That an injunction be issued enjoining and restraining Defendant, Anh Hung Nguyen, and each of his agents, employees, attorneys, and all those in active concert or participation with him from:

(a)    Defendant's continued use, publication, and display of BANILLA GAMES Mark, the BANILLA GAMES (stylized w/bananas) Mark, the CRUMBLE CAVE Mark, the BOURBON STREET DICE Mark, the VEGAS MAGIC

30

Mark, the PLUNDERIN' PIRATES Mark, the PLUNDERIN' PIRATES (stylized) Mark, the OFFSHORE ANGLER Mark, the TERROR TAVERN Mark, and the GORGON TREASURES OF GREECE Mark;

(b)     Defendant's continued use, publication, and display of the Copyrighted Works, namely the Fusion Copyrighted Work, the Fusion 2 Copyrighted Work, the Fusion 3 Copyrighted Work, the Fusion 4 Copyrighted Work, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Crumble Cave Copyrighted Work, the Bourbon Street Dice Copyrighted Work, the Ticket to Ride Copyrighted Work, the Vegas Magic Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work;

(c)     Defendant's continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and

(d)     Defendant's use of Banilla's trademarks and intellectual property, including the Illicit Games.

3.     For the entry of an order directing Defendant, Anh Hung Nguyen and all other persons, firms, or corporations in active concert or privity or in participation with Defendant, to deliver up to Banilla all products, advertisements, promotional materials, packaging, and other items in their possession or under their control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503(b).

31

4.      For the imposition of a constructive trust for disgorgement of all profits realized by the Defendant as a result of his infringing conduct and for an assessment of actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount no less than $2,400,000.000 for Defendant's willful infringement of the Copyrighted Works.

5.      For an assessment of actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount not less than $2,400,000.000 for Defendant's willful infringement of the Copyrighted Works.

6.      For an assessment of: actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 15 U.S.C. § 1117(c) in an amount not less than $20,000,000.00 for Defendant's willful infringement of Banilla's Marks.

7.      For an assessment of: (a) damages suffered by Banilla, pursuant to 15 U.S.C. § 1117(a) and (b) an award of Banilla's costs and attorneys' fees to the full extent provided for by 15 U.S.C. § 1117 and 17 U.S.C. § 505.

8.      For a judgment against Defendant in an amount to be determined at trial, but not less than $22,400,000.00 plus interest and costs as allowed by law.

9.      For damages awarded to Banilla as allowed by law for Defendant's willful infringements.

10.     For costs and reasonable attorneys' fees, as allowed by law.

11.     For such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Banilla respectfully demands a trial by jury on all claims and issues so triable.

Dated this 22nd day of June 2026.          Respectfully submitted,


By: /s/ Robert Wm. Best
Robert Wm. Best, State Bar No. 00787075
SDTX Bar No. 1561719
WHITEFORD, TAYLOR & PRESTON LLP
249 Central Park Avenue, Suite 300-91
Virginia Beach, Virginia 23462
Telephone: (757) 271-9752
Facsimile: (757) 271-9737
E-Mail: rbest@whitefordlaw.com

Stephen M. Faraci, Sr., SDTX Bar No. 3598047
*ATTORNEY IN CHARGE*
Robert N. Drewry, SDTX Bar No. 3906869
WHITEFORD, TAYLOR & PRESTON L.L.P.
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone: (804) 977-3307
Facsimile: (804) 977-3298
E-Mail: sfaraci@whitefordlaw.com
E-Mail: rdrewry@whitefordlaw.com

***Attorneys for Banilla Games, Inc.***